IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. RONALD CLEVELAND, | ) | |
|     Petitioner, | ) | |
| | ) | |
|                v. | ) | 08 C 4068 |
| | ) | |
| JOHN COX,[1] | ) | |
|     Respondent. | ) | |

### MEMORANDUM AND ORDER

Petitioner Ronald Cleveland's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, Cleveland's petition is denied.

**I.     Background**

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Cleveland has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The court thus adopts the state court's recitation of the facts, and will briefly summarize the key facts which are relevant to Cleveland's § 2254 petition.

    **A.     Cleveland's Trial**

After a bench trial, petitioner Ronald Cleveland was convicted of burglary and was sentenced to a 15-year term of imprisonment. He is currently in the custody of John Cox, the Warden of Vienna Correctional Center in Vienna, Illinois, and his inmate number is N90847.

---

[1] The clerk is directed to substitute the current warden at the Vienna Correctional Center, John Cox, as the respondent in this case. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

Cleveland is a former employee of the Michael Reese Hospital, where he worked as a custodian. On the evening of November 14, 2003, personnel at the hospital discovered that four microscopes were missing from four offices in the hospital's pathology department. The pathology department had been victimized by microscope theft twice before (specifically, four microscopes had twice been stolen from the same four offices that were robbed on November 14, 2003). After the second set of microscopes were stolen, the hospital installed a surveillance system, but did not publicize this security measure.

Beginning at 5:00 p.m. on the evening of November 14, 2003, until 9:00 a.m. the following day, the pathology department's surveillance system recorded certain views of the pathology department on a black and white time-lapse videotape. At trial, Timothy Anderson (the director of human resources at the time) testified that he saw Cleveland, whom he recognized from previous encounters, looking through windows of the department's office doors, entering four of those offices, and "exiting with bags full of something." *People v. Cleveland*, No. 1-06-0409, at 3 (Ill. App. Ct. May 29, 2007) (unpublished order). Cleveland then "deposited the bags in a certain area of the department, then collected them and exited through a side door." *Id*. The doors of the offices that Cleveland entered and exited showed signs of forcible entry, based on the condition of the locks and the presence of gouges in the wood frames around the locks.

On cross-examination, Anderson conceded that because the tape was in black and white, he could not ascertain what color the bags were. In addition, because the video did not show the interior of the offices, it did not show Cleveland removing the microscopes.

Bob Giovannoni, the manager of environmental services at the hospital at the relevant time, testified that on the night of the burglary, Cleveland was working a shift from 2:30 p.m. to 11:00 p.m., but was not assigned to clean the pathology department. He also testified that the hospital used clear garbage bags for regular waste and red bags for biohazardous waste.

After Cleveland's arrest, the police told him they had recovered a surveillance tape. Cleveland then stated that all of the office doors were unlocked and admitted that he had carried out four red plastic bags from the pathology department. The police searched Cleveland as well as his house and his car, but never recovered the microscopes.

Cleveland's first attorney was David Wiener, who did not view the videotape because he did not have the proper equipment to play a time-lapse recording. According to Wiener, one week before trial, the State told him it did not intend to use the tape at trial because it had not yet found a machine that could play it. Wiener did not represent Cleveland at trial due to a scheduling conflict. Instead, attorney Michael Oppenheimer represented Cleveland at trial. The State located a suitable videotape player shortly before trial and Oppenheimer was able to view the videotape before Cleveland's trial started.

After a bench trial where the State presented, among other things, the videotape, the court found Cleveland guilty. Because Cleveland was a Class X offender due to his prior convictions, he was subject to a sentence of six to thirty years of imprisonment. The trial court sentenced Cleveland to a 15-year term of imprisonment.

It also conducted a hearing on whether counsels' performance was deficient to the extent that Cleveland's arguments were based on the trial court record. Specifically, it held that Weiner could not be faulted for his failure to view the tape prior to trial because: (1) the State told him it did not plan to introduce the tape into evidence; and (2) Cleveland could not have been

prejudiced because Weiner did not represent him at trial. It similarly found that the timing of Oppenheimer's viewing of the tape was reasonable since he viewed it as soon as a suitable tape player was located and that Cleveland had not established that he was prejudiced by the timing of the viewing of the tape.

B.     **Direct Appeal**

Cleveland appealed and his counsel sought leave to withdraw. Cleveland opposed the motion to withdraw. The state appellate court granted counsel's motion to withdraw and affirmed the circuit court's judgment of conviction and sentence. In its order, among other things, it found that Cleveland's fifteen-year sentence was neither excessive nor void based on the alleged failure to admonish him about the possibility of an extended sentence.

Cleveland filed a pro se petition for leave to appeal ("PLA"), arguing that: (1) numerous witnesses presented perjured testimony at trial; (2) his attorney failed to show sufficient interest in his case; (3) the trial court was biased against him and made derogatory remarks that were improperly excised from the trial transcript; (4) his attorney improperly failed to obtain evidence showing how much the microscopes weighed; and (5) his attorney did not adequately communicate with him before trial. On November 12, 2007, the Illinois Supreme Court denied Cleveland's PLA.

C.     **State Post-Conviction Proceedings**

On January 31, 2008, Cleveland filed a state post-conviction petition, which was denied. The respondent has provided this court with a copy of the state court docket for this proceeding. The docket does not indicate that Cleveland appealed this decision.

### D. Federal Habeas Proceedings

On June 30, 2008, Cleveland filed a timely federal habeas petition pursuant to 28 U.S.C. § 2254. In his first claim, Cleveland argues that trial counsel (Weiner and Oppenheimer) were ineffective because Oppenheimer told him that the State was seeking a sentence of three to seven years. In his second claim, Cleveland asserts that the Illinois Appellate Court (a) erred when it allowed his appellate counsel for his direct appeal to withdraw; and (b) when ruling on the motion for leave to withdraw, erroneously stated that Cleveland had been tried before a jury. According to Cleveland, this alleged error means that the court mixed his appeal up with another case.

In his third claim, Cleveland contends that his 15-year sentence is void as a matter of law because the court told him before trial that he faced a sentence of three to seven years. Finally, in his fourth claim, entitled "Excessive Sentence," he lists numerous issues: (a) the trial court did not advise him at an unspecified time about his three-year term of mandatory supervised release ("MSR"); (b) the State violated his due process rights by withholding the videotape until shortly before trial; (c) the evidence against him was insufficient to support a guilty finding; and (d) his trial counsel was ineffective because he was inadequately prepared for trial and failed to obtain an expert to voice concerns about the videotape.

## II. Discussion

### A. Threshold Matters

The court will begin by summarizing the rules governing exhaustion and procedural default and by recapping the standard of review that guides this court in resolving Cleveland's § 2254 petition.

### 1. Exhaustion and Procedural Default

Before this court may reach the merits of Cleveland's federal habeas claims, it must consider whether he has exhausted his state remedies and avoided procedural default under Illinois law. *See Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir. 2002).

#### a. Exhaustion of State Court Remedies

To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of his claims before he presents them to a federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). State remedies are exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel*, 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c). Here, Cleveland has exhausted his state court remedies because no state court relief is available to him at this stage in the proceedings.

#### b. Procedural Default

A petitioner must present his claims to the Illinois courts, up to and including the Illinois Supreme Court, to avoid procedural default. *See Boerckel*, 526 U.S. at 844. This means that his claims must appear not only in a petitioner's PLA but also in his filings with the state trial court and intermediate appellate court. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means that it is procedurally barred); *Boerckel*, 526 U.S. at 844 (failure to present claim to state's highest court means that it is procedurally barred); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) ("In Illinois, . . . a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court"); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) ("Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction

proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory").

Nevertheless, this court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 2. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively"

unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

**B.     Cleveland's Claims**

**1.     Ineffective Assistance – Direct Proceedings**

First, Cleveland contends that Oppenheimer, his counsel at the trial court level, provided ineffective assistance of counsel when he told Cleveland that the State was seeking a sentence of three to seven years, despite the fact that Cleveland subsequently received an extended-term 15-year sentence. Because Cleveland did not raise this issue on direct appeal, the court assumes that Cleveland is also arguing that his appellate counsel's decision not to raise this claim on direct appeal was constitutionally ineffective.

To the extent that Cleveland is challenging a decision by his trial counsel, he clearly did not include this issue in the PLA filed with the Illinois Supreme Court on direct appeal.[2] Moreover, to the extent that it matches up with arguments presented to the state trial court in his

---

[2] Cleveland appears to have attempted to present this issue to the trial court in his direct proceedings. That court declined to address claims relating to Oppenheimer's performance which were based on matters outside the record. It thus only considered Cleveland's claim that Oppenheimer did not review the videotape in enough time to prepare for trial. This court cannot consider the merits of the state court's decision to limit its consideration of arguments about Oppenheimer because Cleveland procedurally defaulted any such argument by not presenting it to the state court on appeal.

state post-conviction proceedings, Cleveland did not appeal from the denial of state post-conviction relief. Thus, he did not present this issue to the Illinois Appellate Court and then to the Illinois Supreme Court as necessary to avoid procedural default. Accordingly, any claim based on Oppenheimer's assessment of Cleveland's sentencing range is procedurally defaulted. *See e.g., Boerckel*, 526 U.S. at 844.

Similarly, any argument based on appellate counsel's failure to raise the sentencing advice issue on direct appeal is defaulted because while Cleveland raised this contention in his post-conviction motion for relief, he did not appeal from the denial of state post-conviction relief. *See id*.

Cleveland also may be attempting to challenge the state court's rejection of his claim that Weiner was ineffective, as he mentions Weiner's name in the ineffective assistance section of his § 2254 petition. The contours of this argument are unclear, as Weiner does not appear to have given Cleveland advice about his possible sentencing range, and the alleged failure to provide advice about this subject is the focus of Cleveland's first claim. To the extent that Cleveland is trying to raise any such claim, it is defaulted as no such claim appears in the PLA filed in Cleveland's direct appeal and he did not file an appeal from the denial of state post-conviction relief.

In any event, any such claim against any of Cleveland's attorneys would be unavailing as the Illinois Appellate Court held that a defendant must be admonished about the possible length of a sentence only in the case of guilty plea proceedings. *See People v. Cleveland*, No. 1-06-0409, at 6-7. As the respondent notes, Cleveland has not identified any federal constitutional right to be admonished about the possible length of a sentence prior to commencing a bench trial,

and the United States Supreme Court does not appear to have ever held that an admonishment of this type is necessary.

Where there is no controlling Supreme Court precedent, a habeas petitioner "faces an impossible hurdle in showing the state court contradicted, or unreasonably applied, clearly established federal law as determined by the Supreme Court." *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006) (rejecting § 2254 petition where no Supreme Court authority supported the petitioner's claim that he was entitled to be admonished about a mandatory parole term before pleading guilty and noting that a habeas petitioner "faces an impossible hurdle" when the Supreme Court has not clearly established a right); *see also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (when there is no Supreme Court precedent on point, the state court cannot unreasonably apply clearly established federal law as required by § 2254(d)(1)). Thus, any claim based on what Cleveland's attorneys may have told him about his possible sentencing range would fail even if Cleveland had properly preserved these claims.

### 2. The Illinois Appellate Court's Ruling on Counsel's Motion for Leave to Withdraw

In his second claim, Cleveland asserts that the Illinois Appellate Court (a) erred when it allowed his appellate counsel for his direct appeal to withdraw; and (b) when ruling on the motion for leave to withdraw, erroneously stated that Cleveland had been tried before a jury. According to Cleveland, this alleged error means that the court mixed his appeal up with another case.

This claim, like Cleveland's ineffective assistance claim, is procedurally defaulted because it did not appear in the PLA filed with the Illinois Supreme Court. In any event, it fails on the merits. It is true that while the Illinois Appellate Court's decision on direct appeal begins

with the words, "[f]ollowing a bench trial . . . ." but that the decision also refers to a jury verdict. *See People v. Cleveland*, No. 1-06-0409, at 1-2 ("Viewed in the light most favorable to the prosecution, we find that the evidence adduced at trial was sufficient to allow the jury to find that the elements of burglary were proved beyond a reasonable doubt"). The court's 7-page opinion, however, leaves no doubt whatsoever that the reference to a jury was a typographical error and that the Illinois Appellate Court considered Cleveland's arguments. Indeed, the opinion refers to Cleveland by name, discusses his arguments in detail, and reviews the evidence presented to the trial court. Thus, this argument is a non-starter as even if it had been properly preserved, Cleveland has not pointed to any Supreme Court authority indicating that a passing misstatement on a non-material point violates due process or any other constitutional right, there is no such authority, and the error committed here is clearly harmless and did not prejudice Cleveland in any manner whatsoever.

### 3. Admonishment About Cleveland's Sentence

In his third claim, Cleveland contends that his extended 15-year sentence is void as a matter of law because the court told him before trial that he faced a sentence of three to seven years. Once again, this claim is procedurally defaulted because Cleveland did not include it in his PLA on direct appeal. Moreover, as noted above, even if this claim had been properly preserved, the Supreme Court has not held that defendants are constitutionally entitled to be admonished by the trial court prior to trial about the sentence they face.

The court also notes that the respondent has provided an excerpt from the trial transcript which shows only that the only time the trial court referred to a potential three to seven year sentence was *after* the trial had started. Resp. Ex. J at G-5. Thus, even if this claim was properly preserved and constitutionally cognizable, it still would not help Cleveland because Cleveland

- 11 -

has not presented any evidence showing that once trial began, he would and could have pleaded guilty at that point had he known about his eligibility to receive an extended sentence. Any claim that Cleveland would have attempted to plead guilty had he known of the possibility of receiving an enhanced sentence would also be revisionist history as Cleveland argued at trial and argues today that he was innocent, despite all of the evidence presented by the State.

### 4. "Excessive Sentence"

Finally, Cleveland's fourth claim, entitled "Excessive Sentence," lists numerous issues: (a) the trial court did not advise him at an unspecified time about his three-year term of MSR; (b) the State violated his due process rights by withholding the videotape until shortly before trial; (c) the evidence against him was insufficient to support a guilty finding; and (d) his trial counsel was ineffective because he was inadequately prepared for trial and failed to obtain an expert to voice concerns about the videotape.

### i. MSR

Yet again, Cleveland's MSR argument is procedurally defaulted as it did not appear in the only PLA that Cleveland filed. It would also be unavailing if it had been properly preserved. The court has already discussed why Cleveland's belief that he was entitled to be admonished about the length of a potential sentence prior to trial is incorrect. In addition, Cleveland does not and cannot claim that his sentence exceeded the sentencing range of a valid state statute. Accordingly, the severity of his sentence cannot form the basis of federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67 (noting that state law violations provide no basis for federal habeas relief). Next, Cleveland does not contend that the trial court lacked jurisdiction to impose a sentence upon him or that the trial court committed a constitutional error, which made his

sentence fundamentally unfair. *See Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994). Thus, any sentencing claim is beyond the province of federal habeas review.

### ii. Production of the Videotape

Cleveland contends that the State failed to turn over the surveillance video in a timely fashion. The trial court found that the State provided the defense with a copy of the videotape shortly after the prosecution located a machine that could play a time-lapse tape of the type at issue here, and hence allowed the defense to view the tape as soon as it was possible to do so. Cleveland did not include this claim in the PLA that he filed in his direct appeal, so it is procedurally defaulted.

In any event, there is no constitutional entitlement to the production of all inculpatory evidence prior to trial. *See Kimmelman v. Morrison*, 477 U.S. 365, 305 (1986) ("counsel's failure to request discovery, again, was not based on 'strategy,' but on counsel's mistaken beliefs that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense . . . "). Cleveland's arguments based on the timing of the production of the videotape thus would fail even if they were not defaulted.

### iii. Sufficiency of the Evidence

Cleveland next argues that there was insufficient evidence to support the trial court's guilty finding. *Jackson v. Virginia*, 443 U.S. 307 (1979), contains the relevant standard for direct appellate review. In *Jackson*, the Supreme Court held that a conviction must stand if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319.

This argument is, once again, procedurally defaulted as it did not appear in Cleveland's PLA. And once again, it would fail on the merits if it was properly before the court, as the record contains ample evidence supporting the trial court's finding, including the highly damaging videotape showing Cleveland leaving the four offices in question – where he was not supposed to be – carrying opaque garbage bags filled with unknown objects, and testimony supporting the conclusion that the bags contained the missing microscopes. In addition, the doors of the offices that Cleveland entered and exited on the evening that the microscopes were stolen showed signs of forcible entry, based on the condition of the locks and the presence of gouges in the wood frames around the locks.

The court also notes that when the state trial court denied Cleveland's motion for a new trial based on sufficiency of the evidence, it characterized Cleveland's contention that he was not the man on the tape as "ridiculous" and "without any factual basis whatsoever." Resp. Ex. J at J-7. While this language may appear harsh, it is consistent with the ample and consistent evidence identifying Cleveland as the man on the tape and supporting the conclusion that he stole the microscopes at issue. In sum, in light of all the evidence presented at trial, Cleveland's disagreement with the trial court's finding simply does not support a sufficiency of the evidence claim even if such a claim was properly before the court.

### iv. Ineffective Assistance

Cleveland's final argument – that Oppenheimer was ineffective for answering "ready for trial" when he had only recently viewed the videotape – is not procedurally defaulted as a broad reading of his PLA could include this claim. The Illinois Appellate Court rejected this argument, stating, "the record shows that counsel's conduct was reasonable in light of the fact that no machine to view the tape had been located until that time [immediately prior to trial], and

defendant has not shown how he was prejudiced by the timing of counsel's viewing." *People v. Cleveland*, No. 1-06-0409, at 5.

To render effective assistance of counsel under the Sixth Amendment to the United States Constitution, counsel's performance must satisfy the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under the first prong of the *Strickland* standard, Cleveland must show that his counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. The second *Strickland* prong requires Cleveland to establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694. If a defendant fails to satisfy one of the *Strickland* prongs, the court's inquiry under *Strickland* ends. *See id*. at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002).

Here, Cleveland has not shown that the state court's application of *Strickland* was objectively unreasonable because he has not shown that any other lawyer would have acted any differently, given that the trial court's finding that the State was unable to locate a suitable tape player any sooner than it did. Cleveland also has not explained what his counsel would have done differently if he had been able to view the tape any earlier, or how viewing the tape shortly before trial prejudiced him. Given that the State told defense counsel that it did not intend to use the tape and only changed its mind when it located a suitable tape player, the court also cannot fault defense counsel for not obtaining his own tape player earlier.

Cleveland had an opportunity to cross-examine the State's witnesses and present his arguments that the man on the tape was not him, and that the bags containing unknown objects that were carried out of the pilfered pathology offices did not contain microscopes. The state court's rejection of these arguments is not an denunciation of counsel's performance, and it

certainly is not an unreasonable application of the *Strickland* standard to the facts of this case. Thus, the court rejects Cleveland's ineffective assistance argument based on the timing of defense counsel's viewing of the tape.

### 5.     Exceptions to Procedural Default

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Although Cleveland does not contend that cause and prejudice or the fundamental miscarriage of justice exceptions excuse his default, the court will nevertheless consider whether these exceptions can help him.

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Here, Cleveland failed to properly follow state procedural rules by not raising all of his arguments at all stages of the state court proceedings. Nothing in the record before the court indicates that an objective factor prevented him from doing so. Thus, cause does not excuse his default. Moreover, an allegation of ineffective assistance of counsel is not, by itself, enough to establish prejudice. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998). Thus, neither cause nor prejudice exists.

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present

clear and convincing evidence that, but for the alleged error, no reasonable fact finder would have convicted him. *Id*. Cleveland's petition, as well as the state court pleadings submitted to the court, do not contain any substantiated allegations of actual innocence. In fact, the record contains ample evidence supporting the trial court's guilty finding and showing that Cleveland was a recidivist. Thus, this exception does not apply.

### III. Conclusion

For the above reasons, Cleveland's § 2254 petition [1-1] is denied. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.

DATE:   January 27, 2009                  _____
                                          Blanche M. Manning
                                          United States District Court Judge